**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01447-NYW

JULIE A MACKINNEY,

      Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Allstate Fire and Casualty Insurance Company's ("Defendant" or "Allstate") Partial Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (the "Motion to Dismiss"). [#8, filed June 16, 2016]. This motion is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the Order Referring Case dated July 27, 2016, [#26]. The court concludes that oral argument would not materially assist in disposing of this matter. Accordingly, after carefully considering the partial Motion to Dismiss and associated briefing, the entire case file, and the applicable case law, the partial Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

**PROCEDURAL AND FACTUAL BACKGROUND**

      Julie A. MacKinney ("Plaintiff" or "Ms. MacKinney") is a resident of Golden, Colorado, and Allstate is an Illinois corporation with its principal place of business in Illinois. *See* [#1 at ¶¶ 3–4; #3 at ¶¶ 2–5]. Plaintiff originally filed her Complaint in Jefferson County District Court on

or about April 1, 2016. *See* [#3]. Plaintiff's Complaint alleged three state law causes of action against Defendant for breach of contract, common law bad faith breach of an insurance contract ("common law bad faith"), and violations of Colo. Rev. Stat. ("C.R.S.") § 10–3–1115 Unreasonable Delay and Denial of Insurance Benefits ("statutory bad faith"). *See* [#3 at 8–10]. Approximately two months later, Defendant removed the case to this court, based on diversity of citizenship pursuant to 28 U.S.C. § 1332, on June 14, 2016.[1]  [#1]. A summary of the events giving rise to this action, drawn from the Complaint and taken as true for the purposes of the pending partial Motion to Dismiss, follows.

On or about October 6, 2010, Plaintiff' car—through no fault of her own—collided with another driver ("Ms. Mott"), resulting in injuries to the Plaintiff. [#3 at ¶ 1]. As a result of her injuries, Plaintiff's medical bills totaled approximately $250,000. [*Id.* at ¶ 18]. Plaintiff alleges that as a "direct and reasonably foreseeable result of [her] Injuries (sic)," she suffered and will continue to suffer economic and non-economic damages, as well as damages for physical impairment and/or disfigurement. [*Id.* at ¶ 7]. Further, that because of the automobile accident, Plaintiff is more vulnerable to subsequent injuries. [*Id.* at ¶ 8].

At the time of Plaintiff's accident, there were four insurance contracts in effect between her and Defendant. [*Id.* at ¶ 15]. These included, Policy Numbers 964294702 (the "Auto Policy"), 917977315 (the "KTM Policy"), 964296870 (the "Motorcycle Policy"), and 964296872 (the "Umbrella Policy"). [*Id.*]. Plaintiff alleges that each contract included

---

[1] The Parties agree that Colorado law controls this diversity action, as the Parties entered the insurance contracts at-issue in Colorado, and the events giving rise to Plaintiff's Complaint occurred in Colorado. *See Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012) (Colorado courts apply the most significant relationship test when determining the applicable choice of law in diversity contract disputes).

provisions for uninsured motorists coverage ("UIM")[2] for which Plaintiff paid premiums.  [*Id.* at ¶ 16].  Plaintiff avers that the Auto Policy provided $100,000 in coverage, the KTM and Motorcycle Policies provided $25,000 in coverage each, and the Umbrella Policy provided $500,000 in coverage.  [*Id.* at ¶ 17].

On February 25, 2014, Plaintiff's UIM carrier granted her permission to accept Ms. Mott's offer of $100,000 in bodily injury coverage, thereby releasing Ms. Mott from further damage liability.  [*Id.* at ¶¶ 19–21].  Plaintiff received Ms. Mott's offer on March 12, 2014; however, Plaintiff alleges that she was "legally entitled to collect an amount from Ms. Mott that exceeded $100,000."  [*Id.* at ¶¶ 22–24].  Accordingly, Plaintiff requested UIM benefits from Defendant under her four insurance contracts on June 16, 2014.  [*Id.* at ¶25].  Defendant acknowledged receipt of Plaintiff's request on June 19, 2014, and informed Plaintiff that an offer would be forthcoming in a reasonable amount of time.  [*Id.* at ¶ 26].

Over the next month and a half, Defendant requested, and Plaintiff submitted, additional medical records and bills.  *See* [*id.* at ¶¶ 27–30].  On August 4, 2014, Defendant informed Plaintiff that its investigation was on-going, to which Plaintiff replied that she had already documented over $230,000 in economic losses alone since filing her claim on June 16, 2014.  [*Id.* at ¶¶ 31–32].  In addition, Plaintiff also informed Defendant that the subsequent medical records and bills totaled approximately $25,000 and that Defendant had not contested over $200,000 in accident related medical bills.  [*Id.* at ¶ 33].

On August 19, 2014, Defendant sent a letter to Plaintiff thanking her for "settlement on Claim #1079345491 HCJ ('Claim 1'), and included releases."  [*Id.* at ¶ 34].  The next day,

---

[2] UIM coverage provides benefits for damages caused by a third-party tortfeasor that the tortfeasor would be legally required to pay in excess of any insurance coverage she may have had in effect at the time of the collision.  [#3 at ¶ 16].

Plaintiff left a voicemail with Defendant seeking clarification of its August 19 letter and, on August 22, 2014, Plaintiff wrote Defendant a letter requesting it update its records, as Plaintiff did not agree to settle Claim 1. *See* [*id.* at ¶¶ 35–36]. Plaintiff also requested information on the availability of coverage from additional policies. [*Id.* at ¶ 37]. An Allstate claim's adjuster, Ms. Covak, informed Plaintiff's counsel that an additional policy existed and that she filed an additional claim. [*Id.* at ¶ 38]. On September 1, 2014, Plaintiff received a Claim Acknowledgement Form for Claim #0338786916 HCJ ("Claim 2"). [*Id.* at ¶ 39].

Defendant offered to settle Claim 1 for $100,000 on September 2, 2014, and informed Plaintiff that Claim 2 was under review. [*Id.* at ¶¶ 41–42]. Then, on September 17, 2014, Defendant offered to settle Claim 2 for $25,000. [*Id.* at ¶ 43]. On September 29, 2014, Defendant again offered to settle Claim 1 for $100,000, and informed Plaintiff that the Auto Policy and Motorcycle Policy "***were the only policies***" that provided UIM coverage for Plaintiff's losses (for a settlement total of $125,000); however, Plaintiff informed Defendant of her coverage under the KTM Policy. [*Id.* at ¶¶ 44–45, 48]. In addition, Defendant indicated that they were pleased to settle Claim 2 and included releases as to all claims. [*Id.* at ¶ 46].

On October 6, 2014, Plaintiff received another Claim Acknowledgement Form for Claim #0342431327 AAF ("Claim 3"). [*Id.* at ¶ 47]. Defendant offered to settle Claim 3 for $25,000 (a total settlement of $150,000) and again included releases for all of Plaintiff's claims. *See* [*id.* at ¶¶ 51–53]. Between October 15 and November 17, 2014, Defendant sent repeated requests to Plaintiff to settle Claims 1 and 2, with related releases included. *See* [*id.* at ¶¶ 54–63]. Upon receiving the offers to settle and related releases, Plaintiff's counsel sought clarification from Defendant as to why it continually sent releases to Plaintiff before tendering the UIM benefits, but to no avail. *See* [*id.* at ¶¶ 54, 60, 62, 64]. Then, on November 18, 2014, Defendant sent

Plaintiff $150,000 in benefits—the total settlement offer under the Auto, Motorcycle, and KTM Policies. *See* [*id.* at ¶ 65].

On December 4, 2014, Defendant responded to Plaintiff's questions regarding the claim releases and stated that the releases "acknowledge that Defendant had met its contractual obligations." [*Id.* at ¶ 67]. Despite this response, Plaintiff again sought clarification from Defendant as to why "every time Defendant agreed that more coverage applied to Ms. Mackinney's (sic) loss, Defendant would send a release of all claims." *See* [*id.* at ¶¶ 54, 68–69]. Defendant's counsel responded that Allstate verified that no additional coverage applied to Plaintiff's loss and that Allstate paid in full all available coverage and, once again, requested that Plaintiff sign the claim releases. [*Id.* at ¶¶ 70–71]. On January 9, 2015, Plaintiff responded that she believed Defendant sought to deprive her of additional coverage by forcing her to sign the claim releases, and again sought clarification as to the included releases. [*Id.* at ¶ 72–73]. Thirteen days later, Defense counsel responded with a proposed agreement "relating to the releases," and informed Plaintiff that Allstate paid the maximum amount of benefits from all applicable policies. [*Id.* at ¶ 74]. On February 13, 2015, Plaintiff once again requested clarification as to the purpose of the releases. [*Id.* at ¶ 75].

Plaintiff alleges that during the claims process, Defendant "failed to acknowledge coverages under multiple policies that it knew would benefit Plaintiff and were applicable to her claim"—specifically, coverage under her Umbrella Policy. [*Id.* at ¶¶ 76–77]. In addition, Defendant failed to acknowledge or timely respond to Plaintiff's communications regarding her claims, and that Defendant tried to induce Plaintiff to release it from liability and coverage without informing Plaintiff of all available coverage to her claims. *See* [*id.* at ¶¶ 78–80]. Accordingly, Plaintiff filed claims for breach of contract for Defendant's failure to provide the

contracted-for UIM benefits under Plaintiff's four insurance contracts, common law bad faith for Defendant's unreasonable conduct in settling and/or handling Plaintiff's UIM claims, and statutory bad faith for Defendant's unreasonable delay and denial of Plaintiff's UIM benefits. [*Id.* at 8–10].

In response, Defendant filed its partial Motion to Dismiss on June 16, 2016.   [#8]. Defendant seeks dismissal of Plaintiff's breach of contract claim because Plaintiff's Umbrella Policy contains no UIM provision and because Defendant performed all of its contractual obligations under the three remaining insurance contracts.   *See* [*id.* at 5–6].   Defendant also seeks dismissal of Plaintiff's statutory bad faith claim because the one-year statute of limitations bars such a claim.   [*Id.* at 6].   And, lastly, dismissal of Plaintiff's common law bad faith claim because the Umbrella Policy does not provide for UIM benefits and, therefore, Plaintiff cannot maintain any failure to pay claim under that Policy.   *See* [*id.* at 10].   The court addresses the Parties' arguments below.

## STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."   *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.*  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Rule 12(b)(6) provides that the court may only consider facts alleged within the complaint. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004).  However, a district court may consider arguments contained in the memorandum in opposition to dismiss or documents referred to in the complaint that are central to a plaintiff's claim if the Parties' do not dispute their authenticity without converting the Rule 12(b)(6) motion into a summary judgment motion. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).[3]

---

[3] Defendant attaches six (6) exhibits to its Motion to Dismiss and cites to these exhibits throughout its motion.  Exhibit A is Plaintiff's Complaint. *See* [#8-2].  Exhibits B–E, however, are copies of Plaintiff's four insurance contracts, mentioned in Plaintiff's Complaint, that appear

## ANALYSIS

### I.    Breach of Contract

Under Colorado law, the elements of a breach of contract claim are:  (1) the existence of a contract; (2) the plaintiff's performance of its contractual obligations or its justification(s) for non-performance; (3) the defendant's failure to perform; and (4) the plaintiff's damages.  *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1243 (D. Colo. 2013) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  Defendant argues that Plaintiff's breach of contract claim fails because Plaintiff does not establish Defendant's failure to perform its obligations under the insurance contracts.[4]  *See* [#8 at 5].  For the following reasons, the court respectfully agrees.

In her operative Complaint, Plaintiff alleges that she entered into four insurance contracts with Defendant that were in effect at the time of her accident—the Auto, Motorcycle, KTM, and Umbrella Policies.  *See* [#3 at ¶ 15].  Plaintiff asserts that each policy contained a provision for UIM benefits, which included $500,000 under the Umbrella Policy, $100,000 under the Auto Policy, $25,000 under the Motorcycle Policy, and another $25,000 under the KTM Policy.  [*Id.* at ¶ 17].  Ultimately, Defendant offered to settle, and eventually did settle, Plaintiff's claims for a total of $150,000—a total of the maximum UIM coverage under the Auto, Motorcycle, and KTM Policies.  *See* [*id.* at ¶ 51, 65].  However, despite Plaintiff's repeated requests, Defendant

---

central to Plaintiff's claims and their authenticity does not appear disputed.  *See* [#8-3–8-6]. Accordingly, the court may consider the insurance contracts and analyzes Defendant's partial Motion to Dismiss under Rule 12(b)(6) without converting it to a motion for summary judgment. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

[4] The Parties concede that the four insurance contracts are valid under Colorado law, and there is no dispute as to Plaintiff's performance (paying her insurance premiums).  Accordingly, the court's inquiry does not specifically address those factors.

did not tender any UIM benefits under the Umbrella Policy. *See, e.g.*, [*id.* at ¶¶ 68, 70, 72, 77, 86].

Plaintiff concedes that Defendant did tender the policy limits ($150,000) under the Auto, Motorcycle, and KTM policies—the only three with UIM coverage. [*Id.* at 5–6]. But she insists that she may maintain a breach of contract claim for each of the insurance contracts because Defendant did not tender any UIM benefits under the Umbrella Policy and because Defendant failed to perform its obligations under the four insurance contracts because it did not "conduct the settlement of Plaintiff's [claims] (sic) in good faith and fair dealing." *See* [#20 at 7, 9]. For example, Defendant repeatedly attempted to have Plaintiff sign releases that would discharge Defendant's liability for further coverage, even for additional UIM benefits available to Plaintiff, before issuing payment. [*Id.*]. Next, Defendant failed to respond or unreasonably delayed responding to Plaintiff's inquiries regarding the extent of her UIM coverage and entitlement to benefits. [*Id.*]. Finally, Defendant delayed Plaintiff's benefits when it conducted two separate computer evaluations of Plaintiff's claims, despite the fact that Plaintiff provided medical records and bills that established Plaintiff's entitlement to UIM benefits under her current contracts.[5] [*Id.*]. However, the court respectfully disagrees that these allegations can form the basis for a viable breach of contract claim.

***The Umbrella Policy.*** Plaintiff alleges that the Umbrella Policy provided $500,000 in UIM coverage and that Defendant "failed to acknowledge" coverage under this Policy. *See* [#3

---

[5] Defendant argues, and the court agrees, that Plaintiff's argument in her Response that Defendant conducted two needless evaluations of her claims does not appear within the Complaint. *See* [#29 at 2–3]. Accordingly, the court's analysis is limited to the facts as set forth in her Complaint, not her Response. *See, e.g.*, *In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (explaining that the sufficiency of the plaintiff's allegations is based on those in the complaint, as "[t]he plaintiff[] may not effectively amend [her] Complaint by alleging new facts in [her] response to a motion to dismiss.").

at ¶¶ 17, 77].   However, Plaintiff fails to point the court to any such provision either in the Complaint, [#3], or in her Response to the Motion to Dismiss, [#20].   This court respectfully disagrees that it is too early in the discovery process to make a determination regarding Plaintiff's entitlement to benefits under her Umbrella Policy.   [#20 at 11–12].   Plaintiff does not dispute the authenticity of the Umbrella Policy as offered by Defendant.   [*Id.* at 12].   Plaintiff does not allege that there is some other agreement with Defendant that alters the written Umbrella Policy.   [#3, #20].   Contrary to Plaintiff's argument, the court may consider indisputably authentic documents incorporated by reference that are central to the complaint without converting this instant motion to one for summary judgment.   [#20 at 11].   The Umbrella Policy is such a document.   *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).   Although a party may assert that a contract has certain obligations, the document itself properly controls when it is before the court and "mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true."   *See GFF Corp.*, 130 F.3d at 1385.   To hold otherwise would allow parties to survive a motion to dismiss simply by failing to attach a dispositive document in favor of characterizing the document in a beneficial light without regard to the actual document.   *Id.* at 1385.   Accordingly, the court considers the Umbrella Policy itself in the context of this instant partial Motion to Dismiss.

The Umbrella Policy provides $1,000,000 in "liability protection for Plaintiff" under its Excess Liability provision.   [#8 at 2, 3; #8-6 at 7].   The purpose of this coverage is to protect the insured person (*i.e.*, Plaintiff) from legal liability because of bodily injury, personal injury, or property damage caused by the insured person's conduct.   [#8-6 at 18].   Specifically, the Excess Liability provision reads, in relevant part, "**Allstate** will pay damages which an **insured person**

becomes legally obligated to pay because of **bodily injury, personal injury** or **property damage**, . . . [which] must arise from a covered **occurrence**."   [#8-6 at 18 (emphasis in original)].   The policy excludes "any **bodily injury** or **personal injury** to an **insured person** arising out of any **occurrence**."   [*Id.* at 26 (emphasis in original].   The court's review of the Umbrella Policy's Declaration reveals no provision for UIM coverage, nor does the policy itself reference or acknowledge any such coverage.   *See* [#8-6 at 6–7].   Rather, the Umbrella Policy provides for $1,000,000 in excess liability coverage—coverage that protects Plaintiff from damages she is legally obligated to pay, caused by her operation of a motor vehicle. *See* [*id.* at 7, 18].   Conversely, the Auto, Motorcycle, and KTM Policies explicitly provide UIM coverage and set corresponding policy limits for each policy.   *See generally* [#8-3–#8-5].

Courts interpret insurance contracts consistent with well-settled principles of contractual interpretation.   *See Musclepharm Corp. v. Liberty Ins. Underwriters*, No. 15–cv–00555–REB–KMT, 2016 WL 4179784, at *4 (D. Colo. Aug. 4, 2016) (explaining that courts interpret insurance contracts consistent with well-settled principles of contractual interpretation; thus, "[p]olicy provisions that are clear and unambiguous should be enforced as written.") (citations omitted).   "In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy."   *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).   Moreover, the interpretation of an insurance contract is a matter of law.   *See Locke v. Am. Family Mut. Ins. Co.*, No. 13–cv–01184–MSK–MJW, 2014 WL 4627236, at *3 (D. Colo. Sept. 16, 2014) (citing *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005)).

Therefore, based on the clear and unambiguous terms of the Umbrella Policy, the court concludes that no UIM coverage exists under that policy. *See Lovell v. State Farm Mut. Aut. Ins. Co.*, 466 F.3d 893, 902 (10th Cir. 2006) ("This Court cannot remedy Lovell's dissatisfaction with the terms of her policy by rewriting the terms to equalize the betterment provision with the provision limiting State Farm's liability for loss.").

*Auto, Motorcycle and KTM Policies*.  There is no dispute that Plaintiff has been paid the full UIM benefits under the other three policies.  Nevertheless, Plaintiff insists that she may still maintain a breach of contract claim as to those policies because Defendant breached the insurance contracts by failing to settle Plaintiff's claims in "good faith and fair dealing." *See* [#29 at 6–7].  This court respectfully disagrees.  Unlike commercial contracts, Colorado courts recognize a separate action sounding in tort for breaches of the implied duty of good faith and fair dealing of an insurance contract, *i.e.*, bad faith breach of an insurance contract. *See, e.g.*, *Hiatt v. Schreiber*, 599 F. Supp. 1142, 1145 (D. Colo. 1984) ("Colorado courts have followed the trend established in California recognizing a separate cause of action sounding in tort for bad faith breach of insurance contracts."); *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 ("Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort.").  Based on the foregoing, this court concludes that Plaintiff fails to sufficiently plead facts to support Defendant's failure to perform under the four insurance contracts. *See PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (holding that under Colorado law, to state a claim for breach of contract, a plaintiff must sufficiently plead, *inter alia*, the defendant's failure to perform the contract) (citing *W. Distrib. Co.*, 841 P.2d at 1058)).  Consequently, Plaintiff's claim

for breach of contract is **DISMISSED with prejudice**. *See, e.g.*, *Burns v. Mac*, No. 13–cv–2109–WJM–KLM, 2014 WL 1242032, at \*5 (D. Colo. Mar. 26, 2014) (dismissing with prejudice under Rule 12(b)(6) the plaintiff's breach of contract claims, barred by Colorado's Credit Agreement Statute of Frauds) (citing *Berneike v. Citimortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013)).

## II.   C.R.S. § 10–3–1115

The court next turns to Defendant's argument that Plaintiff's statutory bad faith claim is subject to dismissal due to the statute of limitations. C.R.S. § 10–3–1115(1)(a) provides, "A person engaged in the business of insurance shall not unreasonably delay or deny payment" to an insured person. An insurer's action is unreasonable if its delay or denial of payment was without a reasonable basis. *See Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13–cv–01843–MSK–BNB, 2015 WL 1297844, at \*3 (D. Colo. Mar. 19, 2015) (citing C.R.S. § 10–3–1115(2)). "If that is established, the plaintiff is entitled to receive a penalty payment [under C.R.S. § 10–3–1116] of two times the benefit (in addition to the benefit itself) plus reasonable attorney's fees and costs." *Wahlert v. Am. Standard Ins. Co. of Wis.*, 173 F. Supp. 3d 1187, 1193 (D. Colo. 2016).

### A.   Statute of Limitations

Colorado law provides for the recovery of "reasonable attorney fees and court costs and two times the covered benefit" if a claim for payment of benefits to a first-party claimant has been unreasonably delayed or denied. C.R.S. § 10–13–1116(1). Defendant argues that the one-year statute of limitations under C.R.S. § 13–80–103(1)(d) (governing actions for penalties) bars Plaintiff's statutory bad faith claim. *See* [#8 at 6]. For the following reasons, the court declines

to dismiss Plaintiff's statutory bad faith claim based on a one-year statute of limitation at this juncture.

Defendant removed this action to federal court, invoking the court's diversity jurisdiction. [#1]. Accordingly, this court follows the most recent decisions of the state's highest court. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). Where there is no controlling state decision, the federal court must attempt to predict what the state's highest court would do. *Id.* Currently, the Colorado Supreme Court has not explicitly decided whether a one- or two-year statute of limitations applies to a statutory bad faith claim, or whether the claim is penal in nature (which would lead to the application of C.R.S. § 13–80–103(1)(d)). Therefore, this court must attempt to predict what the Colorado Supreme Court would do, seeking guidance from the decisions rendered by lower courts in Colorado and by courts in this District. For statute of limitations purposes, the Colorado Supreme Court articulated a three-part test for determining whether a statutory claim is one for a penalty: "whether (1) the statute asserts a new and distinct cause of action; (2) the claim would allow recovery without proof of actual damages; and (3) the claim would allow an award in excess of actual damages." *Kruse v. McKenna*, 178 P.3d 1198, 1201 (Colo. 2008).

There is no dispute that the statutory bad faith claim is a new and distinct cause of action from a common law bad faith claim. *See generally Vaccaro v. American Family Ins. Group*, 275 P.3d 750 (Colo. App. 2012). As to the second prong, a division of the Colorado Court of Appeals has held that a plaintiff need not prove that she was damaged by the unreasonable delay or denial of benefits in order to recover under C.R.S. §§ 10–3–1115 and 10–3–1116. *See Hansen v. Am. Family Mut. Ins. Co.*, --- P. 3d. ----, 2013 WL 6673066, at *9 (Colo. App. Dec. 19, 2013), *rev'd on other grounds*, 375 P.3d 115 (Colo. 2016) (citing *Turner v. State Farm Mut. Auto. Ins.*

*Co.*, No. 09–cv–01926 CMA–KLM, 2010 WL 3239270 (D. Colo. Aug. 12, 2010)).   Some

Colorado trial courts considering the precise issue of the applicable statute of limitations for

statutory bad faith claims have concluded that a one-year statute of limitations applies and the

one-year statute of limitations applies equally to awards of attorney fees, court costs, and two

times the covered benefit.  *See Tower Ridge II Townhome Homeowners Ass'n, Inc. v. Holyoke*

*Mut. Ins. Co. in Salem, Inc.*, Case No. 2014CV33306, Order on Motion for Certification and

Motion for Partial Summary Judgment, at 3 (Arapahoe Dist. Ct. Oct. 8, 2015) (attached).  But

recently, a division of the Colorado Court of Appeals addressed the issue of whether the state

district court appropriately characterized attorney's fees and costs under C.R.S. § 10–3–1116 as

actual damages (*i.e.*, compensatory) rather than penalties, barred under Colorado's survival

statute, C.R.S. § 13–02–101.  *Casper v. Guarantee Trust Life Ins. Co.*, --- P.3d ----, 2016 WL

6803070, at *2 (Colo. App. Nov. 17, 2016) ("This question had never been answered in

Colorado.").  The *Casper* court affirmed the state district court's final judgment of $1,997,996.40

in favor of Mr. Casper on all claims, including his statutory bad faith claim under C.R.S. §§ 10–

3–1115 and 10–3–1116.  *Id.*  On appeal, the defendant argued, *inter alia*, that the district court

improperly characterized attorneys' fees and costs under C.R.S. § 10–3–1116 as actual damages

for purposes of calculating punitive damages.  *Id.*  The defendant averred that such damages

were penalties and were therefore unrecoverable under Colorado's survival statute, which

prohibits a plaintiff's estate from recovering punitive damages or penalties adjudged after the

plaintiff's death.[6]  *Id.*

---

[6] Mr. Casper passed away nine days after the jury returned a verdict in his favor on all claims,
and the defendant moved to dismiss the verdict as to all claims, except his breach of contract
claim.  *Casper*, 2016 WL 6803070 at *2.  On October 30, 2014, the state district court "entered
an amended final judgment, nunc pro tunc to July 15, 2014, in favor of [Mr. Casper's] Estate in

The Court of Appeals disagreed with the defendant and concluded, "reasonable attorney fees and court costs in this context are actual damages and do not constitute penalties or other types of damages." *Id.* at *8.  In reaching this conclusion, the Court of Appeals explained that "[w]hen attorney fees and costs are part of the substance of the lawsuit, that is, when they are the legitimate consequences of the tort or breach of contract sued upon, attorney fees are clearly damages."  *Id.* at *9 (internal quotations and citation omitted).  Thus, the Court of Appeals concluded, attorneys' fees and costs under C.R.S. § 10–3–1116 were a legitimate consequence of a plaintiff's action to remedy an insurer's unreasonable delay or denial of benefits.  *Id.*  The Court of Appeals did acknowledge that "some aspect" of the statute could possibly be considered penal, but that this "only manifests itself in the ability to recover two times the amount of the covered benefit."  *Id.* at *10 (citing *Gerald H. Phipps, Inc.*, 2015 WL 5047640, at *2). Nevertheless, according to the Court of Appeals, the ability to cover twice the covered benefit did not affect its conclusion that attorney's fees and costs were actual damages.  *Id.* at *10–11; *but see Hernandez v. Am. Standard Ins. Co. of Wis.*, No. 11–cv–03076–RBJ, 2013 WL 6633392, at *3 (D. Colo. Dec. 16, 2013) ("Ultimately, this issue will be resolved by Colorado's appellate courts, but my prediction is that the answer will be that a claim under the statute is for a penalty").  The *Casper* decision does not address whether, if a statute is both penal and remedial in nature, what statute of limitations applies, and the Parties have not briefed that issue.  *See e.g. Carlson v. McCoy*, 566 P.3d 1073, 1075 (Colo. 1977) (applying two different statutes of limitation with respect to a treble damages provision and the recovery of attorney's fees because the law was both penal and remedial in nature).

---

the amount of $1,997,996.40" after reducing the non-economic and punitive damages pursuant to statutory caps and awarding one-third of Mr. Casper's requested attorneys' fees. *Id.*

Courts in this District have applied both a two-year, as well as a one-year, statute of limitations to claims under C.R.S. §§ 10–3–1115 and 10–3–1116. *Compare Wardcraft Homes, Inc. v. Emp'rs Mut. Cas. Co.*, 70 F. Supp. 3d 1198, 1213 (D. Colo. 2014) ("The parties do not appear to dispute that a two year statute of limitations applies to Wardcraft's statutory claims.") (citing *Gargano v. Owners Ins. Co.*, No. 12–cv–01109–CMA–BNB, 2014 WL 1032303, at *3 (D. Colo. Mar. 18, 2014), *aff'd* 623 F. App'x 921 (10th Cir. 2015) (holding that the two-year limitation applied to both bad faith breach of an insurance contract claims as well as statutory bad faith claims)) *with Mascarenas v. Am. Family Mut. Ins. Co.*, No. 14–cv–02799–KLM, 2015 WL 8303604, at *8 (D. Colo. Dec. 8, 2015) (explaining that statutory bad faith claims are subject to a one-year statute of limitations because such claims are penal in nature, not claims for actual damages). In both *Wardcraft* and *Gargano*, the Parties agreed that a two-year statute of limitations applied to a plaintiff's statutory bad faith claim because such a claim sounds in tort, and the statute of limitations for a tort claim in Colorado is two years. *See e.g.*, *Gargano*, 2014 WL 1032303, at *3.

On the other hand, in those cases applying a one-year statute of limitations, the parties disputed which limitation (one-year or two-year) applied to the plaintiff's statutory bad faith claims—just as the Parties dispute in this matter, *compare* [#8 at 6–9] *with* [#20 at 10–11]. *See, e.g.*, *Mascarenas*, 2015 WL 8303604, at *8 ("Defendant maintains that this claim is governed by a one-year statute of limitations."). For example, in *Gerald H. Phipps, Inc. v. Travelers Prop. Casualty Co. of Am.*, the court specifically addressed the question of whether the two-year statute of limitations or the one-year statute of limitations, applied to claims under C.R.S. §§ 10–3–1115 and 10–3–1116. No. 14–cv–01642–PAB–KLM, 2015 WL 5047640, at *1 (D. Colo. Aug. 27, 2015). The court concluded that the one-year statute of limitations governed the plaintiff's

statutory bad faith claims, as the statutory claim was a penalty for statute of limitations purposes because: (1) C.R.S. § 10–3–1116(4) authorizes suits in addition to, and does not limit, other statutory or common law actions—a new and distinct cause of action; (2) C.R.S. §§ 10–3–1115 and 10–3–1116 do not require that the insured "suffer and prove damages attributable to any unreasonable delay or denial in the payment of the covered benefit"—recovery without proof of actual damages; and (3) C.R.S. § 10–3–1116(1) allows recovery of "two times the covered benefit"—an award in excess of actual damages. *Id.* at *2–3 (citing *Kruse*, 178 P.3d at 1201). In other contexts, courts in this District have concluded that claims brought pursuant to §§ 10–3–1115 and 10–3–1116 constitute statutory penalties. *See, e.g.*, *Rooftop Restoration, Inc. v. Ohio Sec. Ins. Co.*, No. 15–cv–00620–LTB–KTM, 2015 WL 9185679, at *4 (D. Colo. Dec. 17, 2015) (finding recovery under a statutory bad faith claim to be a penalty).

Based on the foregoing, it appears that the law regarding the applicable statute of limitations remains uncertain. Defendant does not challenge Plaintiff's common law bad faith claim as to the Auto, Motorcycle, and KTM Policies at this phase, and any additional discovery associated with Plaintiff's statutory bad faith claim, beyond what would otherwise be taken in the context of a common law bad faith claim, will likely be minimal. The Parties will have the opportunity to address the statute of limitations again at the dispositive motion phase, and perhaps the law with respect to applicable statute of limitations will be better settled at that phase. Accordingly, Defendant's Motion to Dismiss as to Plaintiff's statutory bad faith claim on statute of limitations grounds is **DENIED**, with leave to renew the issue through a subsequent dispositive motion. *Cf. Joe Hand Promotions, Inc. v. Dugout, LLC*, No. 13–cv–00821–CMA–CBS, 2013 WL 5323403, at *1 (D. Colo. Sept. 23, 2013) (explaining that the defense of statute

of limitations may be resolved upon a Rule 12(b)(6) motion when it is *clear* on the face of the Complaint that the plaintiff did not initiate the action within the statutory period).

### B.     The Umbrella Policy and Defendant's Request for Fees

Defendant also argues that Plaintiff cannot maintain any cause of action for unreasonably delayed or denied UIM benefits under the Umbrella Policy, because this policy does not provide such benefits.[7] *See* [#8 at 9–12; #29 at 9–12].   According to Defendant, it is entitled to fees under C.R.S. § 10–3–1116(5), because Plaintiff's claims, as they relate to any unpaid UIM benefits under the Umbrella Policy, are frivolous.  *See* [#8 at 12; #29 at 12].  Plaintiff responds that consideration of the Umbrella Policy's language is inappropriate at this phase because, "a court may not consider matters outside the allegations in the complaint when ruling on a motion to dismiss for failure to state a claim."  [#20 at 11].  However, as discussed in detail above, an exception to this rule exists for documents that are central to the plaintiff's claims and the parties do not dispute their authenticity.  *See Alvarado*, 493 F.3d at 1215.  Plaintiff also avers that she disputes Defendant's interpretation of the Umbrella Policy's coverage and that it is "too early in the discovery process" to determine Plaintiff's entitlement to UIM benefits under the Umbrella Policy, as experts are needed to determine the applicability and scope of this Policy.  *See* [*id.* at 12].  For the reasons stated above, this court respectfully disagrees.

As discussed above, the court concluded that the Umbrella Policy did not include UIM benefits.  Therefore, Plaintiff cannot maintain a statutory or common law bad faith claim based on the delay or denial of UIM benefits under the Umbrella Policy.  Under Colorado law, a common law bad faith claim depends on whether the insurer's conduct was appropriate under the

---

[7] Because Defendant already challenged the Umbrella Policy as to Plaintiff's breach of contract claim and statutory bad faith claim, the court interprets Defendant's arguments here as a challenge to Plaintiff's common law bad faith claim as it relates to the Umbrella Policy.

circumstances.  *See Breaux v. Am. Family Mut. Ins. Co.*, 554 F.3d 854, 863 (10th Cir. 2009)

(quoting *Goodson*, 89 P.3d at 415)).  This requires the insured to demonstrate that under industry

standards, the insurer's conduct was (1) unreasonable and (2) the insurer knew or recklessly

disregarded the unreasonableness of its conduct.  *See Burgess v. Mid-Century Ins. Co.*, 841 P.2d

325, 328 (Colo. App. 1992).  Here, if the Umbrella Policy does not provide UIM benefits to Ms.

MacKinney, there is no factual basis to support her allegation that Allstate unreasonably delayed

or denied UIM benefits under the Umbrella Policy.  *See id.*  Thus, Plaintiff's common law bad

faith claim is **DISMISSED** to the extent it relates to unpaid UIM benefits under the Umbrella

Policy.  *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.,* 558 F.3d 1184, 1193 (10th

Cir. 2009) (citations omitted) (observing that "[i] is settled law in Colorado that a bad faith claim

must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed

damages flow from the denial of coverage."); *Wagner v. Am. Family Mut. Ins. Co.*, 569 F. App'x

574, 580 (10th Cir. 2014) (holding that where denial of an insured's claim was reasonable based

on a fair application of policy exclusions, insured could not maintain either a statutory or

common law bad faith claim against the insurer).  The bad faith claims **REMAIN**, however, as

they relate to the three policies that included UIM benefits—the Auto, Motorcycle, and KTM

Policies.

Lastly, Defendant argues that it is entitled to fees it "incurred in having to respond to

Plaintiff's Complaint with the present motion pursuant to C.R.S. § 10–3–1116(5)" with regard to

the statutory bad faith claim.  [#8 at 11-12].  Section 10–3–1116(5) allows the court to award the

defendant its attorney's fees and costs "[i]f the court finds that an action brought pursuant to this

section was frivolous as provided in article 17 of title 13 C.R.S."  Article 17 of title 13 of the

Colorado Revised Statutes does not expressly define "frivolous," C.R.S. § 13–17–101 *et seq.*, but

trial courts have observed that "a claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense." *Harrison v. Luse*, 760 F. Supp. 1394, 1400 (D. Colo.), *aff'd*, 951 F.2d 1259 (10th Cir. 1991) (citing *W. United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo. 1984)).   Moreover, a claim is frivolous if the plaintiff cannot support it with any credible evidence at trial, even if the allegations in the complaint are sufficient to survive a motion to dismiss.  *See City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005).

Defendant contends that Plaintiff's statutory bad faith claims are frivolous because she brought such claims outside the time period, and because the Umbrella Policy clearly does not encompass UIM benefits.  [#8 at 11].  Here, Defendant has prevailed on its arguments with regard to the Umbrella Policy, but has not prevailed as to the application of the statute of limitations due to the uncertainty of the law.  Indeed, the applicable statute of limitations for Plaintiff's statutory bad faith claim is still developing; *Casper* was decided by a division of the Colorado Court of Appeals after the filing of this action and less than a month ago.  Any determination of attorney fees rest within the sound discretion of the court, C.R.S. 13–17–103, and based on the current record before it, this court declines to award attorney fees to Defendant.  Therefore, Defendant's request, at this phase, for fees under C.R.S. § 10–3–1116(5) is **DENIED**.[8]  *See Locke*, 2014 WL 4627236, at *4 (denying the defendant's prayer for fees because, "[a]lthough American Family has prevailed in the interpretation of its policies, the Court has not and does not determine that Ms. Locke's contentions are wholly irrational.").

---

[8]  In so ruling, this court does not preclude Defendant from relying upon the dismissal of Plaintiff's claims as related to the Umbrella Policy as a ground for attorney fees pursuant to § 10–13–1116(5) at a later time.

## CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED**:

(1)     Defendant's Partial Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), [#8], is **GRANTED IN PART and DENIED IN PART**;

(2)     Plaintiff's First Claim for Relief for Breach of Contract is **DISMISSED with prejudice**;

(3)     Plaintiff's Second Claim for Relief for Common Law Breach of Insurance Contract is **DISMISSED** as it relates to the Umbrella Policy and **REMAINS** as it relates to the Auto, Motorcycle, and KTM Policies;

(4)     Plaintiff's Third Claim for Relief for Unreasonable Delay and Denial under C.R.S. § 10–3–1115 **REMAINS**; and

(5)     Defendant's Prayer for Fees and Costs under Colo. Rev. Stat. § 10–3–1116(5) is **DENIED**.

DATED:  December 1, 2016                          BY THE COURT:

 

 

                                        s/ Nina Y. Wang
                                        United States Magistrate Judge