IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01447-NYW

JULIE A MACKINNEY,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant Allstate Fire and Casualty Insurance Company's ("Defendant" or "Allstate") Motion for Summary Judgment (or "Motion"). [#39,[1] filed May 26, 2017]. The Motion is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the Order Referring Case dated July 27, 2016, [#26]. Upon careful review of the Motion and associated briefing, the entire case file, the applicable law, and the comments offered during the July 27, 2017 Motion Hearing, the court **GRANTS IN PART and DENIES IN PART** the Motion for Summary Judgment.[2]

---

[1] Where the court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [#___] and uses the page number as assigned by the ECF system, except when citing from the transcript of a deposition. When citing the transcript of a deposition, the court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript. Additionally, where the court refers to filings in other actions, it uses the convention [ECF. ___].

[2] On July 28, 2017, Plaintiff filed a Status Report indicating that he had, in fact, produced certain voicemails during discovery. [#49]. While the voicemail is characterized in Plaintiff's Response to the Motion for Summary Judgment [#43 at 6 ¶ 38], it was not offered as evidence in support of the Response. *See* [#43 through #43-12]. Accordingly, while the court appreciates Plaintiff's clarification, it has no impact on the court's analysis herein.

## BACKGROUND

Julie A. MacKinney ("Plaintiff" or "Ms. MacKinney") initiated this matter by filing her Complaint in Jefferson County District Court on April 1, 2016. *See* [#3]. Plaintiff's Complaint alleges three state law causes of action against Defendant for: (1) breach of contract; (2) common law bad faith breach of an insurance contract ("bad faith"); and (3) violations of Colo. Rev. Stat. § 10-3-1115 Unreasonable Delay and Denial of Insurance Benefits ("statutory bad faith"). *See* [*id.* at 8-10]. Defendant removed the case to this court, based on diversity of citizenship pursuant to 28 U.S.C. § 1332, on June 14, 2016. [#1].

On June 16, 2016, Allstate filed its Partial Motion to Dismiss, seeking dismissal of Plaintiff's breach of contract claim, Plaintiff's statutory bad faith claim, and any claim based on Allstate Policy Number 964296872 (the "Umbrella Policy"). *See* [#8]. The undersigned granted in part and denied in part Defendant's Motion to Dismiss, dismissing Plaintiff's breach of contract claim in its entirety, as well as her bad faith and statutory bad faith claims as they related to the Umbrella Policy only. [#30]. Thus, Plaintiff's remaining claims are her bad faith (as to the three remaining Allstate Insurance Policies) and statutory bad faith claims.[3] [*Id.*].

Pursuant to the court's Scheduling Order [#28], Defendant filed the instant Motion on May 26, 2017. [#39]. Plaintiff filed a response and Defendant a reply. [#43; #45]. The

---

[3] In moving to dismiss Plaintiff's statutory bad faith claim, Defendant argued that the statute of limitations barred such a claim. However, the court declined to adopt Defendant's argument, acknowledging that the law was unclear as to what the applicable statute of limitations is for statutory bad faith claims. [#30 at 13-19]. Recently, the Honorable William J. Martinez certified, and the Colorado Supreme Court accepted, the following question: "Is a claim brought pursuant to Colorado Revised Statutes § 10-3-1116 subject to the one-year statute of limitations found in Colorado Revised Statutes § 13-80-103(d) and applicable to 'All actions for any penalty of forfeiture of any penal statutes'?" *See Rooftop Restorations, Inc. v. Am. Family Mut. Ins. Co.*, No. 2017SA31 (Colo. March 3, 2017); *Rooftop Restorations, Inc.*, No. 15–cv–02560–WJM–STV, [ECF. 37 at 2]. To date, the Colorado Supreme Court has yet to provide a definitive ruling on the certified question.

undersigned held a Motion Hearing on the Motion for Summary Judgment on July 27, 2017, and took the Motion under advisement. [#46]. The Motion being ripe for resolution, the undersigned considers the Parties' arguments below.

## UNDISPUTED MATERIAL FACTS

On October 6, 2010, Plaintiff was involved in a motor vehicle accident with Melissa Mott. [#39 at Movant's Statements of Material Facts ("MSMF") ¶ 1; #43 at Counter-Statement of Facts ("CSF") ¶ 1]. At the time of the accident, Allstate insured Plaintiff's vehicle under three policies that provided uninsured motorists coverage ("UIM"): (1) Policy Number 964294702 (the "Auto Policy"); (2) Policy Number 917977315 (the "KTM Policy"); and (3) 964296870 (the "Motorcycle Policy"). [#39 at MSMF ¶ 2; #43 at CSF ¶¶ 2-3]. The total UIM coverage under these policies was $150,000 ($100,000 under the Auto Policy and $25,000 under the KTM and Motorcycle Policies, respectively). [#39 at MSMF ¶ 2; #43 at CSF ¶¶ 2-3]. Also at the time of the accident, Ms. Mott carried liability insurance of $100,000. [#39 at MSMF ¶ 3; #43 at CSF ¶ 4].

On February 25, 2014, Defendant granted Plaintiff permission to accept Ms. Mott's offer of $100,000, which she received on March 12, 2014. [#39 at MSMF ¶ 4; #43 at CSF ¶¶ 4-5]. On June 16, 2014, Plaintiff, through counsel, made a demand for underinsured motorist ("UIM") coverage to Allstate. [#43 at CSF ¶ 7]. Allstate then tendered the $150,000 to Plaintiff on November 18, 2014. [#39 at MSMF ¶ 5; #43 at CSF ¶ 45].

## LEGAL STANDARDS

**I.  Summary Judgment**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

3

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

If the moving party demonstrates an absence of evidence supporting an essential element of the opposing party's claims, the burden shifts to the opposing party to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To satisfy this burden, the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Id.*; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson,* 477 U.S. at 249, 252). In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

## II. Evidence on Summary Judgment

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether she is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. However, it is well-settled that a court may only consider admissible evidence at summary judgment; it may not rely upon allegations in a Complaint. *Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d 1163, 1173 (D. Colo. 2006) (citing *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985)). In this case, the court must carefully consider the admissibility of evidence proffered by Plaintiff to rebut Defendant's Motion for Summary Judgment.

Generally, hearsay is not admissible evidence. Fed. R. Evid. 802. Hearsay is a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Rule 801(d) identifies statements that are not considered hearsay despite being made out of court and provides, in pertinent part:

> (1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
>
> (B) is consistent with the declarant's testimony and is offered:
>
> (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
> (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground; or

> > (C) identifies a person as someone the declarant perceived earlier.
>
> (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
> > (A) was made by the party in an individual or representative capacity;
> >
> > (B) is one the party manifested that it adopted or believed to be true;
> >
> > (C) was made by a person whom the party authorized to make a statement on the subject;
> >
> > (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
> >
> > (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d).

Exceptions to the hearsay rule are set forth in Rule 803 of the Federal Rules of Evidence. Under Tenth Circuit precedent, this court is constrained to disregard hearsay on summary judgment if a proper objection to its use is preserved and the proponent of the testimony can direct the court to no applicable exception to the hearsay rule. *See Johnson v. Weld County Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010).

## ANALYSIS

### I.  Common Law Bad Faith

"It is well-settled that there is an implied covenant of good faith and fair dealing in every insurance contract." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012). "For a common-law claim involving the breach of an underinsured-motorist policy, the insured must prove that the insurer (1) acted 'unreasonably under the circumstances' and (2) 'knowingly or recklessly disregarded the validity of the insured's claim.'" *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (quoting *Goodson v. Am. Standard Ins.*

6

*Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) (en banc)); *see also Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012) (en banc) (explaining that UIM claims are "first-party" claims because the insured "is suing his own insurance company"). The reasonableness of the insurer's conduct is measured objectively, i.e., whether the insurer acted reasonably based on industry standards. *See Gustafson v. Am. Family Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1303 (D. Colo. 2012).

In moving for summary judgment on Plaintiff's bad faith claim, Defendant offers three different theories that summary judgment is proper. First, Defendant argues that Plaintiff fails to identify any facts to substantiate her allegation that Defendant acted under unreasonably in settling her UIM claims. *See* [#39 at 8-9]. Specifically, Defendant contends that Plaintiff failed to identify any relevant facts when asked to do so during written discovery, and Plaintiff testified that she did not communicate directly with Allstate, that she could not form an opinion as to whether Allstate's actions were "unreasonable," and that she was unaware of the UIM process or that Defendant had tendered $150,000 to her attorney. [*Id.* at 9-11]. Second, in its Reply, Defendant also takes issue with Plaintiff's failure to proffer *expert* evidence on the applicable industry standards. *See* [#45 at 7-9]. Third, Defendant argues that Plaintiff fails to adduce sufficient facts to establish that Allstate acted knowingly or recklessly. [#39 at 11; #45 at 9]. Because the court concludes that the third argument is dispositive, it limits its discussion in this section to it.

Plaintiff acknowledges that one element of a common law bad faith claim is establishing that the insurer knowingly or recklessly disregarded the validity of the insured's claim. [#43 at 8]. To avoid summary judgment on both claims, Ms. MacKinney argues that "the insurer knew the extent of Plaintiff's economic losses on June 24, 2014 (if not earlier)" and that Allstate knew

7

that its requests for additional information from Ms. MacKinney were "superfluous." [*Id.* at 9]. Ms. Mackinney also argues that Allstate's request for the execution of releases was unreasonable. [*Id.* at 10].

There is, however, no admissible evidence to support these factual conclusions about Allstate's knowledge or reckless disregard of the validity of Ms. MacKinney's claim. Drawing all inferences in favor of Ms. MacKinney, the court concludes that Allstate's correspondence dated August 19, 2014, reflects that Allstate evaluated her claim to meet or exceed $100,000.00 [#43-6 at 22; #43-7 at 1-2].[4] Allstate again confirmed this as of September 2, 2014. [#43-7 at 3-4]. Then, as of September 17, 2014, Allstate tendered a separate offer to settle for $25,000 on a different policy. [#43-7 at 7]. On September 29, 2014, Allstate confirmed that "policy #964294702 [the Auto Policy] and policy #96429870 [the Motorcycle Policy] are the only policies which provides UIM coverage to Julie Mackinney [sic] for the date of loss 10/6/2010." [#43-7 at 8]. On October 14, 2014, Allstate made a settlement offer of $25,000 under a third policy, the KTM Policy (#917977315) for a total settlement amount of $150,000. [#43-8 at 15]. Allstate paid the total amount of $150,000 to Plaintiff's counsel on or about November 18, 2014. However, Plaintiff offers no testimony from Allstate or other admissible evidence that reflects when Allstate determined that the full extent of Ms. MacKinney's claim was valid with respect to all of the policies in comparison to when it offered to pay her the amounts due under the policies. Nor does Plaintiff proffer evidence of when Allstate confirmed that all three policies provided coverage in comparison to when it offered to pay her the amounts due under the policies. Nor does the evidence establish a genuine issue of material fact as to whether Allstate refused to identify the KTM policy, despite having the knowledge that this policy was available

---

[4] The court considers Allstate's correspondence as non-hearsay under Rule 801(d)(2) of the Federal Rules of Evidence, a statement by an opposing party.

8

to Plaintiff for coverage. The letters from Allstate do not reflect that information but, rather, reflect only a chronology of events with no explanation of Allstate's knowledge or motives. [#43-6 at 18-21]. Plaintiff may not rely upon her own counsel's correspondence to Allstate to establish the validity or value of her claim, as the substantive contents of such letters are inadmissible hearsay. Fed. R. Evid. 801-802; *O'Sullivan v. GEICO Casualty Co.*, No. 15-cv-1838-WJM-MJW, 2017 WL 1243017, at *4 (D. Colo. Mar. 24, 2017).

At oral argument, Plaintiff's counsel argued that she could survive summary judgment based on the inferences that a reasonable jury could draw from the chronology and Allstate's own claim notes. *See* [#52 at 12:15-25, 15:19-25, 20:1-20, 21:9-13]. Plaintiff argued that the claim history maintained by Allstate reflected its knowledge that other policies existed that it intentionally or recklessly disregarded while adjusting Ms. MacKinney's claim. *See, e.g.*, [*id.* at 14:12-21, 15:4-15, 16:1-9, 22:2-23]. Plaintiff contends that these claim notes are not hearsay, and this court agrees that the statements contained in the claim notes are admissible as non-hearsay, opposing party statements. Fed. R. Civ. P. 801(d)(2). But the proffered claim notes also do not establish Allstate's knowledge or reckless disregard for the validity of Plaintiff's claim. In seeking additional information on June 16, 2014, the claim notes make no reference as to whether the remainder of the documentation is sufficient. [#43-9 at 1]. The claim notes further state on August 20, 2014, that the adjuster found two additional motorcycle policies, but that the adjuster "need[ed] to contact the Agent and ask if the motorcycle policies are companion policies." [#43-10 at 1]. It also states, "[Allstate] may need to get a new claim set up under the motorcycle policy for uim." [*Id.*]. It, however, has no discussion as to which motorcycle policy might require a new claim, why both would not require a new claim, or her discussion with the agent. [*Id.*]. Rather, the claim notes reflect that two days later, the adjuster requested, "THIS

9

EXACT CLAIM ON POLICY #964296870 FOR UM UIM and assign to ASHLI KOVACH for rep'd handling." [*Id.*]. There is no evidence in the claim notes that as of August 20, 2014, Allstate knew that $150,000 of benefits were "immediately due" [#43 at ¶ 32] or that the KTM Policy afforded coverage. Allstate's correspondence of September 29, 2014, also does not, contrary to Plaintiff's assertion, establish that Allstate knowingly or recklessly disregarded coverage under the KTM Policy; rather, the letter states, "only one premium has been collected for all motorcycles." [#43-7 at 8]. Therefore, absent any testimony from Allstate on this topic, all that is left before the court is speculation as to Allstate's knowledge or disregard with respect to the KTM Policy. Speculation and conjecture are insufficient to create a genuine issue of material fact as to the element that Allstate "knowingly or recklessly disregarded the validity of the insured's claim" at summary judgment. *See Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (holding that an inference is unreasonable if it is a mere possibility or involves a degree of speculation and conjecture that requires the factfinder to make a guess).

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's common law bad faith claim.

## II. Statutory Bad Faith

Colo. Rev. Stat. § 10-3-1115(1)(a) provides, "A person engaged in the business of insurance shall not unreasonably delay or deny payment" to an insured person. An insurer's action is unreasonable if its delay or denial of payment was without a reasonable basis. *See Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13–cv–01843–MSK–BNB, 2015 WL 1297844, at *3 (D. Colo. Mar. 19, 2015) (citing Colo. Rev. Stat. § 10-3-1115(2)). Thus, the only element at issue here is whether Allstate delayed Plaintiff's UIM benefits without a reasonable basis—

evidence of bad faith demonstrating that the insurer acted unreasonably also supports a statutory bad faith claim. *See Baker*, 939 F. Supp. at 1107 (D. Colo. 2013) (citations omitted); *see also Wahlert v. Am. Standard Ins. Co. of Wisconsin*, 173 F. Supp. 3d 1187, 1193 (D. Colo. 2016) (explaining that, because of a statutory bad faith claim's lesser liability burden and onerous penalty provision, such a claim is financially more threatening to an insurer). And, like its common law counterpart, statutory bad faith claims are evaluated objectively, based on industry standards. *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015).

Defendant moves for summary judgment on the statutory bad faith claim because Plaintiff fails to adduce any evidence establishing that it acted unreasonably, including evidence of the objective industry standards, or that its delay lacked any reasonable basis.[5] *See* [#39 at 12-14; #45 at 10-12]. Specifically, Plaintiff failed to identify any relevant facts when asked to do so during written discovery, and Plaintiff testified that she did not communicate directly with Allstate, that she could not form an opinion as to whether Allstate's actions were "unreasonable," and that she was unaware of the UIM process or that Defendant had tendered $150,000 to her attorney. [#39 at 13-14]. In its Reply, Defendant contends that Plaintiff fails to proffer *expert* evidence on the applicable industry standards and, therefore, cannot prevail on establishing that any delay was unreasonable. *See* [#45 at 7-9].

---

[5] Defendant also references 3 Colo. Code Regs. § 702-5:5-1-14(4)(A)(1), which requires insurers to issue a decision and/or make a payment of benefits due under an insurance policy within sixty days of receiving a valid and complete claim unless there is a reasonable dispute regarding such a claim. *See* [#39 at 12]. This regulation may be considered evidence of industry standards; however, it does not alter the statutory standard of reasonableness. *See Stamey v. Nat'l Gen. Ins. Co.*, No. 15-CV-0560-WJM-MJW, 2016 WL 8540310, at *5 (D. Colo. Sept. 22, 2016); *but see Fisher v. State Farm Mut. Auto. Ins. Co.*, No. 15SC472, --- P.3d ----, 2016 WL 3207869, at *6 (Colo. App. 2016) ("[T]he regulation and its authorizing statute simply have no application to the civil action established by section 10-3-1115. Rather, the regulation applies to administrative penalties"). Nonetheless, the court concludes that genuine issues of material fact exist as to Plaintiff's statutory bad faith claim.

As an initial matter, as discussed above, the statements made by Plaintiff's counsel in correspondence to Allstate is not admissible evidence for the truth of assertions made by counsel on behalf of Ms. MacKinney. Plaintiff testified that she was generally unaware of the status of her claims (both against Allstate and Ms. Mott) and that she could not answer how Allstate's behavior was "unreasonable or unfair." *See, e.g.*, [#39-5 at 47:18-21, 48:6-14, 49:14-19, 50:6-15]. But Plaintiff also testified that she "fe[lt] like [she] was not helped;" that "it's just been a very long delay, and, yes I had depression issues and taking medication;" that she felt there was a "big lack of action;" that she "felt like Allstate didn't really care what was going on with me . . . I feel like I was left on my own;" and that "it's like nobody cares. I didn't do anything wrong, but I'm paying for it." *See* [*id.* at 48:15-20, 53:5-12, 53:21-24, 54:2-13]. While these statements do not establish that Allstate's actions were unreasonable compared to industry standards and may subject Plaintiff to significant proof or credibility issues at trial, drawing all inferences in favor of Plaintiff, this court concludes that Plaintiff's testimony (or lack thereof) fails to justify summary judgment on Ms. MacKinney's claim for statutory bad faith. Indeed, Defendant offers no authority, and this court found none, that suggests the chronology of events that can be established through Allstate's own documentation necessarily precludes Plaintiff's statutory bad faith claim. Nor is this court's role at summary judgment to weigh evidence or determine credibility.

Next, Defendant argues that Plaintiff cannot establish that it acted unreasonably because she fails to "identify evidence of objective industry standards germane to the elements of Plaintiff's claims." [#45 at 7]. Defendant asserts that Plaintiff cannot rely on the Unfair Claims Settlements Practices Act ("UCSPA") because it provides a legal standard, not the relevant industry standard, and because "Plaintiff's claims are not within the common knowledge of

12

everyday citizens, and thus require objective evidence." [#45 at 7-8]. In her Response, Plaintiff argues that expert testimony is not required because her claims are within the common knowledge and experience of lay jurors. [#43 at 11]. According to Plaintiff, under the UCSPA, a reasonable jury could conclude that Allstate misrepresented pertinent facts or insurance policy provisions regarding the coverage at issue; failed to acknowledge and act reasonably promptly to communications regarding claims under the policies at issue; failed to attempt to settle Plaintiff's claims in a good faith, prompt manner; and failed to adopt or implement reasonable standards for prompt investigation of Plaintiff's claims. *See* [*id.* at 11-12 (citing to Colo. Rev. Stat. § 10-3-1104(1)(h)(I), (II), (VI), (XVII))].

Here, the court respectfully concludes that Plaintiff's bad faith claim is within the common knowledge and experience of an ordinary person, particularly because there appears to be no ultimate dispute that Ms. MacKinney's claims exceeded her insurance coverage. The Parties' disputes in this action are limited to whether Allstate reasonably investigated and/or timely identified all UIM policies applicable to Plaintiff's accident with Ms. Mott, i.e., did Allstate unreasonably delay the payment of $150,000 in UIM benefits and whether Allstate reasonably requested the execution of releases prior to payment of UIM benefits.[6] *Cf. Meadows v. Elec. Ins. Co.*, No. 15-CV-02524-MEH, 2016 WL 7868824, at *9-10 (D. Colo. June 30, 2016) (holding that, although some portions of the plaintiff's bad faith claims for medical expenses,

---

[6] In so ruling, the court does not predetermine the scope of evidence that will be permitted regarding whether Allstate's requirement that Ms. MacKinney execute releases amounts to unreasonable conduct. [#43 at 10]. The record before the court reflects Allstate Policies [#39-2, #39-3, #39-4] that Plaintiff contends have no provisions requiring releases. [#43 at 14]. The admissible evidence of Allstate's correspondence also reflects Allstate waiting for the execution of releases before releasing funds. *See e.g.*, [#43-7 at 7, 9]. But there is no admissible evidence before the court at this juncture that suggests that either side can argue that releases are consistent, or inconsistent, with industry standards. Nor is the court convinced that any witness will be able to testify as to how to interpret the releases proffered, given that there is no witness to testify about the legal significance of the releases.

13

lost wages, pain, and suffering may require expert testimony, it is for the jury to decide whether the defendant reasonably investigated her UIM claim) (citing *Allen*, 102 P.3d at 345 (expert testimony not required for question of whether insurer reasonably investigated the underlying events of an automobile accident)). This court concludes that, in this specific context, the lack of an expert in this action is not *per se* fatal. *See Racz v. SBLI USA Mut. Life Ins. Co.*, No. 11-CV-02398-CMA-KLM, 2012 WL 5989484, at *5 (D. Colo. Nov. 29, 2012) (concluding, "Plaintiff's bad faith claim need not be dismissed merely because Plaintiff has failed to endorse an expert witness on insurance or claims handling."). The UCSPA can provide valid, though not conclusive, evidence of the applicable standard of care. *See Allen*, 102 P.3d at 344-45 ("[W]hether the standard of care is a matter of common knowledge is committed to the sound discretion of the trial court"); *Baker v. Allied Prop. and Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1108 (D. Colo. 2013) (holding a jury may be instructed that willful conduct of the kind set out in the Unfair Claims Settlement Practices Act is prohibited and may be considered if the delay was caused by or contributed to by such prohibited conduct).

And the UCSPA clearly prohibits:

- Misrepresenting pertinent facts or insurance policy provisions relating to the coverages at issue, Colo. Rev. Stat. § 10-3-1104(1)(h)(I);
- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies, Colo. Rev. Stat. § 10-3-1104(1)(h)(II);
- Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed, Colo. Rev. Stat. § 10-3-1104(1)(h)(V);

- Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, Colo. Rev. Stat. § 10-3-1104(1)(h)(V); and

- Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law of denial of a claim or for the offer of a compromise statement. Colo. Rev. Stat. § 10-3-1104(a)(h) (XIV).

At a minimum, these elements could guide a jury's consideration of Allstate's reasonableness under the particular circumstances of this case depending upon what evidence is admitted at trial.

On balance, this court holds that it is more appropriate for a jury, rather than this court at summary judgment, to determine whether Allstate's actions in adjusting Ms. MacKinney's claims were reasonable.[7] *See O'Sullivan v. Geico Cas. Co.*, No. 15-CV-1838-WJM-MJW, --- F. Supp. 3d ----, 2017 WL 1400899, at *10-12 (D. Colo. Feb. 2, 2017) (holding that evidence that the defendant acted contrary to established industry standards created a genuine issue of fact as to the plaintiff's statutory bad faith claims); *accord Meadows*, 2016 WL 7868824, at *10 (holding that the defendant was not entitled to summary judgment on either of the plaintiff's bad faith claims, "[b]ecause the reasonableness of the insurer's conduct is an element of both"). Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's statutory bad faith claim.

---

[7] This is because it is not Plaintiff's burden at summary judgment to prove that Defendant's conduct was unreasonable; rather, Ms. MacKinney need only create a genuine issue of material fact as to Allstate's unreasonableness. Perhaps, if Allstate provided a declaration from its claims adjuster, Ms. Kovach, explaining the processes she took in adjusting Ms. MacKinney's claims and opining that her actions were reasonable, it is entirely possible that Plaintiff could not proffer evidence sufficient to rebut this proposition. However, such is not the case here.

## CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED**:

(1) Defendant's Motion for Summary Judgment [#39] is **GRANTED IN PART and DENIED IN PART**, consistent with the ruling herein; and

(2) A Final Pretrial Conference is **SET** for **September 15, 2017, at 10:30 a.m.**, and the Proposed Pretrial Order is due on or before **September 8, 2017**.


DATED:  August 8, 2017                                       BY THE COURT:

                                                             s/ Nina Y. Wang
                                                             United States Magistrate Judge