IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01447-NYW

JULIE A MACKINNEY,

      Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

      Defendant.

## ORDER ON MOTION IN LIMINE

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant Allstate Fire and Casualty Insurance Company's ("Defendant" or "Allstate") Motion in Limine (or "Motion"). [#77, filed August 13, 2018]. The Motion is before the court pursuant to the Order of Reference dated July 27, 2016 [#26], 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. The court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law. For the following reasons, the court **GRANTS IN PART and DENIES IN PART** the Motion in Limine.

## BACKGROUND

      The events giving rise to this dispute stem from an automobile accident between Plaintiff Julie A. MacKinney ("Plaintiff" or "Ms. MacKinney") and non-party Melissa Mott ("Ms. Mott") occurring on or about October 6, 2010. *See* [#70 at 2]. At the time of the accident Allstate insured Plaintiff's vehicle under three policies that provided uninsured motorists coverage ("UIM"): (1) Policy Number 964294702 (the "Auto Policy"); (2) Policy Number 917977315 (the "KTM Policy"); and (3) 964296870 (the "Motorcycle Policy") (collectively, "Policies"). *See* [#39-2; #39-

3; #39-4; #70 at 2]. Ms. Mott also carried liability insurance of $100,000 at the time of the accident.

On February 25, 2014, Defendant granted Plaintiff permission to accept Ms. Mott's offer of $100,000, which she received on March 12, 2014. *See* [#70 at 2]. On June 16, 2014, Plaintiff, through counsel, demanded the UIM coverage from Allstate. Allstate eventually tendered and paid $150,000 to Plaintiff on November 18, 2014. Believing Allstate's conduct was unreasonable in handling her UIM claim, this litigation ensued. Plaintiff's Complaint alleged three state law causes of action against Defendant for: (1) breach of contract; (2) common law bad faith breach of an insurance contract ("bad faith"); and (3) violations of Colo. Rev. Stat. § 10-3-1115 Unreasonable Delay and Denial of Insurance Benefits ("statutory bad faith"). *See* [#1 at 8–10].

On June 16, 2016, Allstate filed its Partial Motion to Dismiss seeking dismissal of Plaintiff's breach of contract claim, Plaintiff's statutory bad faith claim, and any claim based on Allstate Policy Number 964296872 (the "Umbrella Policy"). *See* [#8]. The undersigned granted in part and denied in part Defendant's Motion to Dismiss, dismissing Plaintiff's breach of contract claim in its entirety as well as her bad faith and statutory bad faith claims as they related to the Umbrella Policy because that policy did not provide UIM coverage. [#30].[1] Following the close of discovery, Defendant moved for summary judgment on Plaintiff's remaining bad faith and statutory bad faith claims as to the Policies. [#39]. The court granted in part and denied in part Defendant's Motion for Summary Judgment. In doing so, the court granted summary judgment in

---

[1] Defendant also moved to dismiss Ms. MacKinney's statutory bad faith claim as barred by a one-year statute of limitations. The court denied the applicability of a one-year statute of limitations at that time, noting the divergence of opinions on the matter in this District and lack of guidance from the Colorado Supreme Court. This uncertainty also led to the court administratively closing this matter pending the Colorado Supreme Court's ruling on this precise issue. The Colorado Supreme Court has since held that the one-year statute of limitations found in Colo. Rev. Stat. § 13-80-103(1)(d) *does not* apply to statutory bad faith claims. *See Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 418 P.3d 1173, 1177 (Colo. 2018).

favor of Allstate on Plaintiff's bad faith claim, holding that Plaintiff failed to establish a genuine dispute of material fact, or even proffer any admissible evidence, from which a reasonable juror could infer Defendant knowingly and recklessly disregarded the validity of her UIM claim. *See* [#53 at 7–10]. But the court denied summary judgment as to Plaintiff's statutory bad faith claim, finding a genuine dispute of fact as to the reasonableness of Defendant's conduct in investigating Ms. MacKinney's UIM claim. [*Id.* at 10–14].

The Parties then appeared before the court for a Final Pretrial Conference on July 25, 2018 [#69]. A Final Pretrial Order [#70] and Trial Preparation Order [#71] entered that same day, setting this matter for a two-day jury trial commencing on September 24, 2018. [#69; #70; #71]. The Trial Preparation Order set August 13, 2018 as the deadline for filing motions in limine [#71 at 4], the date on which Defendant's filed the instant Motion [#77].

Relevant here, the Final Pretrial Order dictates that Ms. MacKinney intends to call herself and Ashli Kovach ("Ms. Kovach"), Allstate claim adjuster, as witnesses, and that the only exhibits she seeks to admit are the Policies and written summaries of voicemails from Ms. Kovach to Plaintiff's counsel (one of the several issues identified by Defendant's Motion in Limine). [#70 at 4]. In the instant Motion, Defendant seeks to exclude ten (10) categories of arguments/evidence that Plaintiff may advance at trial. [#77]. Plaintiff concedes several of these points while contesting others. *See* [#78]. I consider the Parties' arguments in turn.

## STANDARD OF REVIEW

Motions in limine exist outside of the Federal Rules of Civil Procedure and Federal Rules of Evidence and serve to enable the court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline,* 188 F. Supp. 2d 1287, 1291 (D. Kan.

2002) (quoting *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (further citations omitted)). Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the parties as they prepare their cases. However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citing *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard [of clearly inadmissible], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")).

## ANALYSIS

### I. Argument That Insurers Profit by Delaying Payment

Allstate seeks to preclude Plaintiff from making "any statements or arguments about any alleged profitability of delayed payments or of any alleged 'business model.'" [#77 at 4]. Based on statements made by Plaintiff's counsel at the motion hearing on Defendant's Motion for Summary Judgment, Allstate contends that Plaintiff may wish to make statements in her opening statement, closing statement, or while questioning witnesses, suggesting that Allstate, like all insurers, profits from delaying payments of UIM claims. *See* [*id.* at 3]. Defendant argues that these statements are prejudicial and irrelevant. [*Id.*].

Plaintiff counters that, despite the prejudicial nature of such statements, they nonetheless speak "directly to the heart of the motive behind delaying or denying benefits." [#78 at 1]. Ms. MacKinney maintains that the delay of payment on claims easily verifiable by Allstate "bestows the exact benefit upon the Defendant consistent with how they earn their profits." [*Id.*]. The court respectfully disagrees.

4

Rule 401 of the Federal Rules of Evidence advises that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). The court may nonetheless exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 403. And though not raised by either Party, such statements may also speak to Allstate's routine business practice, *see id.* at 406. *See also Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (explaining that evidence of an organization's routine practice may be admitted under Rule 406 to prove that it acted in conformity with that practice on this particular occasion, even if it is uncorroborated or there was no eye witness); *accord Fritchie v. Alumax, Inc.*, 931 F. Supp. 662, 676 (D. Neb. 1996) (explicating on why courts admit evidence of routine practices, because "routine business practices are often relied upon by other businesses and because routine business practices are derived from concerted planning activities driven by economic concerns about efficiency which are of necessity more regimented than individual conduct.").

At first blush, Ms. MacKinney's statements may speak to a motive in delaying payment of her UIM benefits because Allstate's routine practice is to delay payment of verifiable claims. *Cf. Oklahoma v. Montgomery*, No. CIV-11-863-C, 2012 WL 12892401, at *4 (W.D. Okla. May 23, 2012) (evidence of wrongdoing by former insurance company's principals "may be relevant to Defendants' assertions that they were overcharged"). But to prove that Allstate's conduct here was a routine practice Ms. MacKinney must offer evidence of numerous, consistent occurrences of the act. *See Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1232–33 (10th Cir. 2001). As Allstate correctly argues, Ms. MacKinney proffers no such evidence and, thus, the court concludes

5

that she lacks any personal knowledge as to whether this is indeed Allstate's routine practice. *See United States v. Oldbear*, 568 F. 814, 822 (10th Cir. 2009) (holding that three proposed witnesses lacked personal knowledge of the tribe's routine practice where they could only identify three instances of the alleged routine practice). Nor does the Final Pretrial Order or witness list in this action disclose any expert witness to testify as to Allstate's routine practices. [#70; #83]. Given these findings, the court concludes that the prejudice to Allstate outweighs any probative value such statements may have in demonstrating that Allstate unreasonably delayed payments to *Ms. MacKinney*. Accordingly, the court **GRANTS** Allstate's Motion in Limine on this issue.

## II. Argument Regarding the Requirement and/or Condition Precedent of a Signed Release

Defendant's argument here is twofold. First, Allstate seeks to preclude any argument that it required Plaintiff to sign a Release before paying her UIM benefits and/or any suggestion that a signed Release is a condition precedent to the payment of UIM benefits. *See* [#77 at 4]. Though conceding that it requested a signed Release, Allstate avers that it paid Plaintiff's UIM benefits without a signed Release and, thus, any argument that Allstate required a Release prior to paying UIM benefits is irrelevant, not probative, and prejudicial. [*Id.*]. Second, Allstate seeks to preclude Plaintiff from arguing that the Release was a "release of all claims." [*Id.*]. Allstate asserts that contract interpretation is for the court in the first instance, and that absent any ambiguity in the contract the jury should not decide the meaning of the terms of a contract. [*Id.* at 5]. These arguments are repeated in Defendant's Trial Brief. [#87]. The court respectfully disagrees on both points.

*First*, it is undisputed that Allstate paid Ms. MacKinney's UIM benefits without her signing the Release. *See, e.g.*, [#77-2 at 4–5]. But it is also undisputed that Allstate tendered several offers to Plaintiff and each time requested that Plaintiff sign a Release. *See, e.g.*, [#43-6 at 22; #43-7 at

6

7, 9, 11]. And Plaintiff avers that the Policies did not contain a provision requiring her to sign a Release prior to receiving the UIM benefits. Thus, while the court agrees that it would be incorrect and misleading to argue that Allstate required a signed Release prior to paying Ms. MacKinney's UIM benefits, the court does not agree that any mention of Allstate's requests for a signed Release, which occurred prior to the actual payment of her UIM benefits, is irrelevant to whether Allstate unreasonably delayed payment of those UIM benefits or that this in some way unfairly prejudices Defendant. *Cf. Wahlert v. Am. Standard Ins. Co. of Wis.*, 173 F. Supp. 3d 1187, 1197–98 (D. Colo. 2016) ("I conclude that a reasonable jury could find that conditioning the payment on Ms. Wahlert's relinquishment of her claim that she was entitled to more under the policy was an unreasonable delay or denial of a benefit.").

*Second*, it is not apparent that Ms. MacKinney seeks the jury to interpret whether the Release was a "release of all claims" as Defendant contends. [#78 at 3]. But, as previously noted, neither Party identifies a witness to testify to the significance of the Release or the interpretation of its terms [#53 at 13 n.6], and it is questionable whether the court would have permitted an expert to testify about the legal scope of a Release. *See, e.g.*, *Auto-Owners Ins. Co. v. Csaszar*, No. 15-cv-02318-CMA-KMT, 2017 WL 5188338, at *6 (D. Colo. Jan. 26, 2017) (excluding expert testimony regarding contract interpretation when the contractual terms are not complex or technical). Rather, all Parties can testify about actions and communications surrounding the tender of the Release to Ms. MacKinney and the Parties' respective instructions and responses to the tender of such Release, e.g., whether Ms. Kovach communicated or Ms. MacKinney reasonably understood that the signed Release was a prerequisite for payment of benefits. And to the extent that Ms. MacKinney testifies that she understood the Release being of "all claims" to be eligible for the payment of benefits, Allstate may probe into whether such an understanding was reasonable

in light of the testimony relating to the Parties' interactions and the plain language of the Release. Accordingly, the court **GRANTS IN PART and DENIES IN PART** Allstate's Motion in Limine on this issue, and any specific concerns regarding testimony about the Release may be raised and ruled upon during trial.

III. **Argument That Requiring a Signed Release Violates Industry Standards**

Defendants argue that Plaintiff can provide no evidence—expert or lay witness, independent, or otherwise—on the pertinent industry standards, such that any argument that requiring a signed Release prior to paying UIM benefits violates industry standards is speculative and prejudicial. [#77 at 5–6]. Plaintiff counters that she need not proffer an expert witness to establish the relevant industry standards, because the Unfair Claims Practices Act ("UCPA") provides examples of conduct violative of industry standards. [#78 at 3]. According to Plaintiff, it is not the signing of the Release that per se violates industry standards; rather, it was Allstate's suggestions that it required a Release before it would pay the UIM benefits that allegedly misrepresented the terms of the Policies. [*Id.*].

In ruling on Defendant's Motion for Summary Judgment, the court noted its skepticism that either party could provide evidence as to whether a Release was consistent or inconsistent with industry standards. *See* [#53 at 13 n.6]. But the court also found that Ms. MacKinney's statutory bad faith claim was "within the common knowledge and experience of an ordinary person, particularly because there appears to be no ultimate dispute that Ms. MacKinney's claims exceeded her insurance coverage." [*Id.* at 13]. In such instances, the UCPA provides valid, though not conclusive, evidence of industry standards. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004); *accord Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890–91 (10th Cir. 2016) (noting that the industry standards "may be established through expert opinions *or* state

law," including the UCPA (emphasis added)). Thus, the court could instruct the jury as to the practices proscribed by the UCPA, Colo. Rev. Stat. § 10-3-1104(1)(h), including but not limited to misrepresenting pertinent facts or policy provisions, failing to promptly respond to communications, failing to affirm or deny coverage within a reasonable time, not attempting to settle claims in good faith, and failing to promptly provide a reasonable explanation for a denied claim, *without* requiring expert testimony. *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1204 (D. Colo. 2018). Because neither side has disclosed any expert witnesses, it appears unlikely that Ms. MacKinney or Ms. Kovach will be permitted to testify as to whether the execution of a Release as a prerequisite to the payment of insurance benefits hews or fails to hew to industry standards.

The court therefore agrees that Plaintiff will not be permitted to testify or argue that requiring a signed Release prior to receiving UIM benefits is a per se violation of industry standards. But if the jury is instructed regarding the UCPA she may be able to argue that the requirement of a Release violates some provision of the UCPA and, in turn, amounts to statutory bad faith. Accordingly, the court **RESERVES** ruling on this basis of Allstate's Motion in Limine in favor of making the appropriate rulings at trial.

## IV. Argument Regarding Any Fiduciary Duty Defendant Owed Plaintiff

Defendant seeks to preclude Plaintiff from arguing that Allstate breached its fiduciary duty owed to Ms. MacKinney. *See* [#77 at 6]. Plaintiff does not oppose Defendant on this issue. [#78 at 4]. Accordingly, the court **GRANTS** Defendant's Motion in Limine on this issue.

## V. Testimony Regarding Plaintiff's Medical Treatment or Bills

Allstate seeks to preclude Plaintiff from testifying about her medical treatment and bills because such testimony is irrelevant to whether Allstate unreasonably delayed her UIM benefits,

9

and "would be nothing more than an improper attempt to appeal to the jury's sympathy." [#77 at 7]. Plaintiff concedes that her medical treatment is irrelevant, but argues that her medical bills are probative of her statutory bad faith claim. [#78 at 4]. She contends that this evidence establishes when she became entitled to the full amount of UIM benefits and, thus, the jury must decide whether Allstate's actions, after accepting her medical bills, supports her claim that it unreasonably delayed payment of that claim. [*Id.*].

It is undisputed that the Policies provided Ms. MacKinney with UIM benefits totaling at least $125,000. And while testimony about Ms. MacKinney's injuries, resulting treatment, her pain and suffering, and the content of the medical bills is not directly relevant to Plaintiff's statutory bad faith claim, the court agrees that Ms. MacKinney should be permitted to testify about the submission of those medical bills, and to argue that such submission and acceptance by Allstate triggered her entitlement to at least $125,000 in UIM benefits. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1224 (10th Cir. 2016) (explaining that a statutory bad faith claim arises where the insured is entitled to benefits owed and the insurer unreasonably delays or denies that claim). Thus, the court finds that unless the Parties agree to a jury instruction or stipulation as to this issue, the court will permit testimony as to when Plaintiff submitted her medical bills, what the general nature of those medical bills were, and when Allstate accepted those bills for purposes of evaluating her UIM claim given its relevance to whether Allstate thereafter unreasonably delayed payment of those benefits. The court therefore **DENIES** Allstate's Motion in Limine on this issue, subject to any trial objections and rulings that the offered testimony is outside the scope permitted by this Order.

**VI.     Letters from Plaintiff's Counsel**

Defendant seeks to exclude any letters from Plaintiff's counsel to Defendant because the contents of such correspondences constitute inadmissible hearsay, are highly prejudicial to Defendant, are self-serving and not probative of any fact concerning Plaintiff's statutory bad faith claim, and Plaintiff did not designate them in the Final Pretrial Order. [#77 at 7–8]. As before, the court again concludes that any letters from Ms. MacKinney's counsel are inadmissible hearsay under Rules 801 and 802 of the Federal Rules of Evidence. These letters are further excludable because Plaintiff's counsel is just that, Ms. MacKinney's attorney, and "is not, and cannot be, called as either a lay or expert witness." *O'Sullivan v. GEICO Cas. Co.*, No. 15-CV-1838-WJM-MJW, 2017 WL 1243017, at *4 (D. Colo. Mar. 24, 2017).

Ms. MacKinney represents that the issue is moot because of the court's Memorandum Opinion and Order finding such letters to be inadmissible hearsay, and maintains that she intends to rely only on the claim notes. [#78 at 5]. Plaintiff, however, reserves her "right to present the witness [Ms. Kovach] with the letter to refresh [her] recollection" and to "correct the record" should Defendant mislead the jury as to the contents of such letters. [*Id.*]. Though the court does not endeavor to predicate the circumstances that may call for this use of these letters, Rule 612 of the Federal Rules of Evidence does allow a party to use a writing to refresh a witness's recollection, even if the party did not identify the writing as an exhibit in the Final Pretrial Order *and* the writing is otherwise inadmissible. *See Jordan v. ENSCO Offshore Co.*, No. CV 15-1226, 2016 WL 2822586, at *2 (E.D. La. May 13, 2016). Accordingly, the court **GRANTS** Defendant's Motion on this issue, subject to appropriate trial rulings.

## VII. Evidence of Plaintiff's Noneconomic Damages

Allstate argues that the court should preclude Ms. MacKinney from presenting any evidence concerning her noneconomic damages. [#77 at 8]. Plaintiff does not oppose this issue. [#78 at 5]. Accordingly, the court **GRANTS** Defendant's Motion in Limine on this issue.

## VIII. Evidence Related to Undisclosed Voicemails

Defendant seeks to preclude the use of undisclosed voicemails allegedly left by Ms. Kovach with someone in Plaintiff's counsel's office. *See* [#77 at 9–10]. Defendant argues that Plaintiff never disclosed the *audio* recording of these voicemails in discovery even after a specific request from Allstate, and that Plaintiff does not identify the *audio* recording as an exhibit in the Final Pretrial Order. [*Id.*]. Thus, Allstate contends that the court should preclude the voicemails, at the least, as a sanction under Rule 37(c)(1) of the Federal Rules of Civil Procedure. *See* [*id.*].

As above, Plaintiff represents that this issue is now moot given the court's colloquy at the Final Pretrial Conference, and that she intends to rely only on the claim notes but reserves her right to present Ms. Kovach with the *audio* recording should she not recall the voicemails or misleads the jury as to the contents. *See* [#78 at 5].

To start, as mentioned, Plaintiff identified only the written summaries of Ms. Kovach's voicemails in the Final Pretrial Order.[2] [#70 at 4]. At the time of the Final Pretrial Conference Defendant represented, and Plaintiff did not rebut, the fact that the *audio* recording of any voicemails had not been disclosed during discovery despite requests for such recording. Even if Defendant had not formally asked for such recording in discovery, parties have an affirmative

---

[2] Those written summaries were not formally transcribed or certified as accurate under the penalty and pains of perjury, and did not appear otherwise authenticated by any witness testimony offered to the court at the time of the Final Pretrial Conference. Nevertheless, as discussed below, the court reserved ruling on the admissibility of the written summaries for trial to be based on the foundation presented by Plaintiff.

obligation under Rule 26(a)(1) of the Federal Rules of Civil Procedure to produce any electronically stored information that the disclosing party has in its possession, custody, or control that it may use to support its claims or defenses unless the use would be solely for impeachment. Fed. R. Civ. P. 26(a)(1). Plaintiff has not demonstrated that her failure in this regard was substantially justified or harmless. *See Poitra v. Sch. Distr. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 668–69 (D. Colo. 2015) (explaining that nondisclosure is substantially justified when there exists a reasonable basis in law and fact and a genuine dispute regarding compliance, and that nondisclosure is harmless if there is no prejudice to the party entitled to the disclosure). Therefore, as a sanction under Rule 37(c) for failure to produce (and without specific ruling regarding the hearsay aspect of such evidence) and having found nothing in the record to establish that Plaintiff's failure to produce was substantially justified or harmless, this court precluded Plaintiff from affirmatively offering the *audio* recording as evidence. *See* [#76 at 7:18–20];[3] Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information … as required by Rule 26(a) or (3), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Ms. MacKinney then purportedly sought to amend the Final Pretrial Order, through a Status Report [#72], to include the *audio* recording of Ms. Kovach's voicemails. The court struck the Status Report, and informed Plaintiff that she could amend the Final Pretrial Order only after meaningfully conferring with Defendant and filing a motion satisfying Rule 16(e)'s heightened "to prevent manifest injustice standard." [#73]. Plaintiff has filed no such motion to date. Thus,

---

[3] In citing to a transcript, the court cites to the document number generated by the CM/ECF system but the page and line numbers generated by the transcript.

Plaintiff's failure to identify the *audio* recording as an exhibit in the Final Pretrial Order is another reason to exclude its use at trial as affirmative evidence.

Plaintiff now suggests that she only wishes to use the *audio* recording if the "Defendant cannot recall the conversations of [sic] misleads the jury as to the substance of the conversations, [and] reserves the right to present the witness with the audio." [#78 at 5]. That position might be tenable if Plaintiff was using the *audio* recording solely for the purposes of impeachment *and* if Allstate had not specifically requested the recording in discovery. But Allstate did propound a specific request for "audio copies of all voicemails left by a representative of Allstate for you or your attorney." [#77-2 at 4]. Accordingly, contrary to Plaintiff's assertion, the *audio* recording is not within the possession, custody, and control of Defendant whose adjuster Ms. Kovach left, rather than received, the voicemail. And Plaintiff's counsel confirmed during the Final Pretrial Conference that Plaintiff did not produce the *audio* recording during discovery, only the written summaries. *See, e.g.*, [#77-4 at 8:9-15, 24-25, 9:1]. Rule 37(d)(1) of the Federal Rules of Civil Procedure provides that, upon motion, a court may sanction a party for failure to disclose after proper service of a request for inspection. Fed. R. Civ. P. 37(d)(1). One appropriate sanction is prohibiting the disobedient party from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(ii). In addition, the court finds that it is logistically challenging, and potentially impossible, to refresh the recollection of a witness through an audio recording in open court without functionally (albeit not formally) admitting it in evidence. Thus, the court will prohibit Ms. MacKinney from utilizing the *audio* recording of Ms. Kovach's voicemails at trial for any purpose.

Finally, it is unclear from Allstate's Motion whether it seeks to preclude Ms. MacKinney's use of even the written summaries of the voicemails at trial. To the extent Defendant also requests

this relief, the court finds this relief unwarranted on the instant Motion. At the Final Pretrial Conference Allstate conceded that Plaintiff had at least disclosed and produced the written summaries, *see* [#76 at 8:9–15, 8:24–9:1, 9:4–10], and Plaintiff designated those summaries in the Final Pretrial Order, *see* [#70 at 4]. And although the court expressed its concerns about the written summaries' admissibility at trial, *see* [#76 at 9:11–12, 9:15–16, 9:19–22, 10:1–8], Defendant offers no argument(s) on this point specifically; thus, the court will address this issue, if appropriate, at trial. Accordingly, the court **GRANTS IN PART and DENIES IN PART** Defendant's Motion in Limine on this issue, and will allow Plaintiff to utilize only the designated written summaries of the voicemails.

IX. **Testimony by Plaintiff Concerning a Timeline of Claim-Handling Events**

In this regard, Defendant seeks to preclude Ms. MacKinney from testifying as to any timeline of claim-handling events, arguing that she admitted in her deposition that she has no personal knowledge of such events. *See* [#77 at 10–11]. Plaintiff acknowledges that she will not testify to any matters she does not have personal knowledge of, but asserts that her knowledge "does not make it more or less likely that the Defendant delayed the benefits without a reasonable basis." [#78 at 5]. She further contends that any questions regarding her lack of personal knowledge is "irrelevant and extremely prejudicial." [*Id.*].

Rule 602 of the Federal Rules of Evidence provides that witnesses may testify to only those matters to which they have personal knowledge. Fed. R. Evid. 602. This does not require positive knowledge or absolute certainty, but the trial court properly excludes testimony if "it finds that the witness could not have actually perceived or observed that which [s]he testifies to." *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (internal quotation marks omitted). The court

15

agrees that Ms. MacKinney does not have personal knowledge of the timeline of Allstate's handling of her claim. For example, Ms. MacKinney testified:

> Q: So do you have any personal knowledge of how – I'm sorry, do you have any personal knowledge of the claim handling related to your UIM coverage?
>
> A: Not really
>
> . . .
>
> Q: And this October 15 letter is confirming that Allstate has offered $150,000, which is the total available UIM coverage under those three policies, correct?
>
> A: I didn't know that they did, but that's what it says.
> . . .
>
> Q: So after June 16, 2014, dealing specifically with the UIM claim, after that date, can you tell me what you think Allstate has done unreasonably?
>
> A: I was not aware of the communication between my attorney and Allstate.
>
> . . .
>
> Q: So you really have no personal independent knowledge of how your UIM claim was handled?
>
> A: Not really.

[#77-6 at 32:14–17, 44:2–7, 49:9–15, 56:2–5].

Whether any line of questioning involving Plaintiff's knowledge (or lack thereof) is irrelevant and prejudicial is an issue the court will decide on a proper objection to such questioning at trial, not based on Plaintiff's assertions in her Response. *See* D.C.COLO.LCivR 7.1(d) (mandating that motions be filed as separate documents, not included in responses or replies). And while it may be true that Plaintiff's lack of knowledge surrounding the timeliness of Allstate's handling of her UIM claim does not affect whether Defendant unreasonably delayed payment of that claim, this issue speaks more to the merits of Ms. MacKinney's statutory bad faith claim and is therefore for the jury to decide. *See Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091,

1107 (D. Colo. 2013) ("[T]he only element at issue in the statutory claim is whether an insurer denied [or delayed] benefits without a reasonable basis."). Accordingly, the court **GRANTS** Defendant's Motion in Limine on this issue.[4]

### X. Correspondences After Defendant Paid UIM Benefits to Plaintiff

Allstate seeks to preclude Plaintiff from introducing any correspondences between her counsel and defense counsel that occurred after Allstate paid the UIM benefits. [#77 at 12]. Plaintiff concedes this issue. Accordingly, the court **GRANTS** Defendant's Motion in Limine on this issue.

### CONCLUSION

Therefore, the court hereby **ORDERS** that:

(1) Defendant's Motion in Limine [#77] is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings herein.

DATED: September 6, 2018

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

[4] The Parties shall not interpret this conclusion as wholly precluding Plaintiff from testifying as to her experiences and feelings during the claim-handling process, as she testified to these very topics, and their associated consequences, throughout her deposition. *E.g.*, [#39-5 at 48:15–20, 53:5–12, 53:21-24, 54:2-13].